CHURCHILL & BAILEY *v.* ASA BOYDEN, Administrator of JAMES MINOT.

When an ancillary administration is granted in this state upon the estate of one who was a resident of another state, creditors residing in such other state are not entitled to have their claims allowed by the commissioners appointed here.

If the funds found here are more than sufficient to pay the creditors residing here, the court will not ordinarily make any decree of distribution among heirs, or legatees, but will remit the balance to the principal administration;—but this is a matter resting in their discretion. REDFIELD, J.

If the estate is solvent, the resident creditors will be entitled to full payment of their claims here; but if insolvent, then the prevailing practice is to pay the resident creditors *pro rata*, taking into the account all the creditors and the whole estate, so far as can be ascertained. *Per* IB.

But in the state where the principal administration is, the entire mass of the creditors are entitled to have their claims allowed, and to share ratably in the assets, until fully paid. *Per* IB.

Defects in form, merely, in a plea will not be reached by general demurrer.

APPEAL from the decision of commissioners, disallowing the plaintiffs' claim upon the estate of James Minot, deceased.

The plaintiffs declared upon a promissory note, executed by the deceased in the State of New York. To this declaration the defendant pleaded that the plaintiffs ought not to have and maintain their action "against the estate of the said James Minot, deceased, in this State," because they alleged, "that the said James Minot, at ' the time of the making of the contract in the plaintiffs' declaration ' mentioned, and until his decease, resided and had his domicil at ' Pomfret, in the county of Chautauque, and State of New York, ' during all which time, and hitherto, the plaintiffs have resided in ' the city, county and state of New York; and that, immediately ' after the decease of the said James Minot, to wit, on the tenth day ' of November, 1842, administration was duly granted in said State

' of New York to one W. S. Hackley, to administer said estate,
' who thereupon accepted said trust, and ever since hath adminis-
' tered the same." To this plea the plaintiffs demurred generally.

The county court rendered judgment in favor of the defendant;
to which decision the plaintiffs excepted.

*W. C. Bradley* for plaintiffs.

The plea of the administrator is considered bad in substance.
1. It does not set forth by what authority any other administration
was granted. 2. Nor sufficiently describe where the other admin-
istrator is to be sought for. 3. It avers that administration was
granted in New York of " said estate," when no other but " estate
in this jurisdiction" had been previously mentioned,—which makes
a void administration. 4. The domicil of the deceased is not *di-
rectly* alleged to have been without this state. 5. It is not alleged
whether there is any *estate* without this jurisdiction. 6. The fact
that the contract was made and the creditor resided in another state
ought not to be sufficient to bar the plaintiffs' claim. The statute
expressly says that the commissioners are to be appointed " to re-
ceive, examine and adjust *all* claims and demands of *all* persons
against the deceased." Rev. St. p. 277, § 1. It is true, that, after
the assets are collected and the debts ascertained, the administrator
is to pay the creditors in a certain order, if there is not sufficient to
pay the whole; Rev. St. p. 282, §§ 31–33; and that the probate
court may make decree for the payment " among the creditors, as
the circumstances of the case shall require." But this, so far from
contravening the former provision, *evidently supposes* that the dis-
crimination is not to be made until the decree of distribution, when
the circumstances can all be taken into consideration.

It is no objection to this view that the statute,—page 274, sect.
36,—provides that, when *debts* against the deceased person in this
State do not require a sale of real or personal property, it may be
sold to pay debts and legacies in another State, because such a
provision would be necessary in the counter case, where the prop-
erty, and not the debts, was in this jurisdiction; and, furthermore,
real estate is not, at common law, assets, nor governed by the *lex
domicilii* (2 Kent, Lect. 37) until made so *by* the statute.

Hall et al. *v.* Denison & Tr.

This view is corroborated by the phraseology, which, if the legislature intended to give a preference *to* its own citizens, would have been so shaped as to have given that preference, after the payment of all debts, in the payment to them of legacies, and not of debts only,—such being the doctrine where the rule of preference prevails. *Harvey v. Richards,* 1 Mason 381.

The case of *Hunt v. Fay, Adm'r,* 7 Vt. 170, presented a different point,—viz, whether a creditor, barred from claiming in the *forum domicilii* in which he resided, might afterwards claim in another jurisdiction, where property of the deceased was situated;— here the question is, can he claim there at all?

*A Keyes* for defendant.

The ancillary administration is made subservient to the rights of creditors within the country; and the balance may be transmitted to the principal administration. *Vaughn v. Barrett,* 5 Vt. 333. *Eames' Adm'r v. Cr's of Eames,* 4 Vt. 256. *Porter's Heirs v. Heydock,* 6 Vt. 374. *Hunt v. Fay, Adm'r,* 7 Vt. 170, 183.

The opinion of the court was delivered by

REDFIELD, J. The only question here is, whether the creditors of an estate, when the principal administration is out of this State, and an administration of estate within this State has been granted here, are all alike entitled to have their demands allowed by the commissioners appointed here; or whether the commission extends only to resident creditors. We think it may be considered well settled, in this State, that it is only the latter class of creditors, who are entitled to have their claims allowed here. This subject has been fully considered by this court, and their views were expressed and reported many years since. *Vaughn v. Barrett,* 5 Vt. 333. *Hunt v. Fay, Adm'r,* 7 Vt. 170. *Porter's Heirs v. Heydock,* 6 Vt. 374.

I am aware, that, upon general principles of *moral equity,* there may be much said against this rule of allowance. But the law seems to be so settled in most of those countries where the common law of England prevails, and in many others. It has never been questioned that the court of probate, where the ancillary adminis-

41

tration is, will take no notice of foreign creditors, and not usually of foreign legatees, or distributees. *Dawes* v. *Head*, 3 Pick. 128. *Davis* v. *Estey*, 8 Pick. 475. *Mothland* v. *Wiseman*, 3 Penn. R. 185. *Miller's Estate*, 3 Rawle 312. Story's Conf. of Laws 334, 336-7. 2 Kent 434 and note.

Some question has been made, whether resident creditors shall be fully paid, if the funds here are sufficient, although not sufficient in all to pay all the creditors. It has also been questioned, how far the courts of the subsidiary administration will proceed to distribute the funds found there among the heirs, or legatees. The prevailing practice upon this latter point is, I apprehend, as above stated, not to decree any such distribution, but to remit the funds to the principal administration. But it is admitted that, even here, there is a discretion in the courts where the funds are found; and, if they do remit them, it is merely from courtesy. *Porter's Heirs* v. *Heydock*, 6 Vt. 374. *Richards* v. *Dutch*, 8 Mass. 506. *Dawes* v. *Boyleston*, 9 Ib. 337. *Stevens* v. *Gaylord*, 11 Ib. 257.

In regard to the payment of resident creditors, the general practice seems to be to pay them *fully*, when the estate is upon the whole clearly solvent,—but if insolvent, to pay them *pro rata*, taking all the creditors and all the estate, so far as can be ascertained, into the account;—although this latter qualification of the rule first stated, of paying *all* resident creditors, is by no means uniform. Each separate administration is foreign to all the others, and absolutely independent of all of them, and may do as it will. But in the principal administration the entire mass of the creditors are *entitled* to have their claims allowed, and to share ratably in the assets, until fully paid. And the more equitable course, because the more equal, would be to have the funds found in other States there collected, and remitted to the principal administration. And this would be done, were it not for the possibility that all the creditors *might* not then be treated *alike* ;—so, to "trammel up consequences," *we* choose to pay *our* creditors first,—generally to the extent of their ratable proportion at least.

This is the settled law; and it is only for this purpose that any commission is here issued in the case of a subsidiary administration. It does not seem much like courtesy, or confidence in others, and

savors not a little of the times, when a *foreigner* and a *barbarian* were the same, and a *foreigner* and an *enemy* were expressed by the same word,—*hostis*. But the law is so settled,—"*ita lex scripta est,*"—and, under the modifications above stated, which it is not to be presumed the probate court will disregard, there seems little danger of injustice in the final result. And should the probate court finally make an improper decree, those injured have their remedy by appeal.

The other defects are considered merely formal, and not reached by general demurrer.

Judgment affirmed.