Johnson, J.
It is claimed: “ 1. That as the intestate at his ■death, and these defendants, were all citizens of Maryland, residing there, where administration was first granted, and as this was a Maryland contract, the Court of Common Pleas of Eranklin county had no jurisdiction over the subject matter, and could acquire none over these defendants in their official character.
2. That if it had or could acquire such jurisdiction, the service on Mayberry Goheen, one of defendants, made out of the State of Ohio, was unauthorized and void.
3. That the personal service made on Susan M. Williams in this state was void or voidable, because made on a summons issued and served within the life of a prior summons, directed to the same officer, and before the prior writ had been returned.
1. As to the jurisdiction of the court over the subject matter and these defendants, aside from the nature of the service.
It was a well settled rule in England, that executors and administrators could not be sued, except in the courts of the country from which they derived their appointment. *464 If a foreign executor or administrator collected assets in England, he could be sued as an executor or administrator de sontoil, though not in his official capacity.
Hence, if a creditor wished to bring suit to reach the-estate, he must first have an English representative appointed by the ecclesiastical court. 2 Williams Ex’rs [1641].
An administrator so appointed, was amenable to the-jurisdiction of the English courts for the due administration of the assets coming into his hands, and subject to-their judgments and orders in-behalf of creditors.
Our statutes (1 S. & C. 566) provide for such administration in this state, on the estate of a non-resident leaving an estate in Ohio. By sundry amendments (1 S. & C. 615, 616) the general administration laws of the state are made-applicable to the settlement of such estates as fully as if the intestate was domiciled within the state at the date of his death; “ and also the remedies and proceedings therein-given against executors and administrators, appointed by the laws of this state, shall apply to and be in full force and effect, as to any foreign administrator or executor appointed by the laws of any other state and residing in Ohio, or having assets or property in the same, and the several courts of probate and of record shall have like power and authority over said foreign executor and administrator, the same as-if appointed by the laws of Ohio.”
The various statutes make ample provisions for cases like the present, and fully warrant the remark of Ranney, J., in Swearingen v. Morris, 14 Ohio St. 431, that, “ By the administration laws, foreign executors and administrators-may sue and be sued in this state like those of our own appointment.”
As these defendants were appointed in this state, they were, so far as the estate was situate in Ohio, representatives under the laws of this state and under the control of our courts, as fully as if the intestate resided here at his death.
Some stress was laid on the fact that this was a cause of action arising in Maryland, and on a contract made there. *465 Of themselves, these facts can have no significance, as it is an action for the recovery of money only, and in its nature transitory. An action may be brought on such a contract in any state where the court has jurisdiction over the subject-matter, and can acquire it by service on the person.
The code, sections 45, 46, and 47, provides for all eases of local actions, and 52 and 53 for those that are transitory.
By section 52, an action other than those named in sections 45, 46, and 47, against a non-resident of this state, . . “ may be brought in any county in which there may be property or debts owing to said defendant, or where he may be found.”
Section 53 provides that every other action must be brought in the county where some of the defendants reside- or may be served.
As this estate had debts owing to it in Eranklin county,, and the intestate and defendants were domiciled in Maryland, the common pleas had jurisdiction over the nonresident defendants, if service could be made under our-civil code.
We have been referred to a number of cases to support the claim made, that the Ohio courts have.no jurisdiction. “ over this controversy between these parties. Swearingen v. Morris, 14 Ohio St. 430; Churchill v. Boyden, 17 Vt. 319, and others.
It is said the administration in Ohio is ancillary to that in Maryland, and that foreign creditors have no right to-prove their claims against the estate here :
“ Ranney, J. Such new administrations (issued in other than state of domicile) are treated as merely ancillary or auxiliary to the original foreign administration, and subordinate to it, so far as regards the collection of the assets, and the proper disposition of them; and, as it seems to me, upon principle, should be limited to the necessity out of which they arise, and confined to the collection of the assets, and the payment of debts due to the citizens of the state, leaving any balance that may remain to be remitted to the state *466 of the decedent’s domicile, .and there disposed of in accordance with the laws of such state.” Swearingen v. Morris, 14 Ohio St. 430.
In Churchill v. Boyden, it was held that creditors residing in tbe state of the domicile of the intestate, are not entitled to have their claims allowed by commissioners appointed in another state, under ancillary administration, “ to examine and adjust claims against the estate.” The case came before the Supreme Court of Vermont on an .appeal from the action of these commissioners refusing to allow the claim against the property in that state, the domicile of the intestate being in New York.
The general doctrine of these cases is, that it is the object of the ancillary administration to administer the assets found within the state, and remit the proceeds to the parent administration; but if there are home creditors, the courts having control of such ancillary administration will not allow the estate to be remitted to the foreign state until such creditors are first paid. If the general estate is solvent they are paid in full; but if not, they are paid pro rata, taking the whole estate and the whole liabilities into account to ascertain such pro rata payment. Dawes v. Head, 3 Pick. 128; Davis v. Estey, 8 Ib. 475; Story Conflict of Laws, 334, 337, 513-515; Hawley v. Richards, 1 Mason, 381
If this were an action that sought to direct the probate court as to the proper administration of these assets found in Ohio, these authorities would be in point. Here there is no contest between creditors residing in Ohio or elsewhere. In fact, we do not know there are any creditors except the plaintiff, if he be one, and, for aught that appears, he was a citizen of Ohio when this suit was brought. The Probate Court of Pickaway county has exclusive jurisdiction over these Ohio assets, and the conduct of these defendants in their administration, as completely as if the intestate had resided in Ohio. Without this Ohio appointment, their authority to administer them did not exist, except by comity.
When so administered according to Ohio laws, the residuum *467 «belongs to the defendants in their capacity as administrators, under the control of the orphans’ court in Maryland.
If any conflict between Ohio and other creditors arise, and the estate was solvent, the probate court of this state might, in its discretion, and probably should require, that the Ohio creditors be paid in full; but if not solvent, a more ■difficult question arises. Some old authorities, acting on the maxim that all foreigners are barbarians and enemies, rehuiré the home creditors to be paid in full, if the assets within the state are sufficient, without regard to the solvency of the general estate. Such a principle is now hardly recognized as sound, or as comporting with the age, ■especially as between citizens of different states of a common Union. Be this as it may, it can not affect the question here.
The law gave the common pleas jurisdiction of the subject-matter in a ease of this kind and amount. The claim was rejected, and it became plaintiff’s duty to sue or become barred.
The object of the action is to adjudicate the claim. If it is established, the plaintiff is a creditor of the estate, on an equality with other creditors, with the right to execution against the estate in a certain event.
The relief sought is not to appropriate the property of the estate in any way, nor will a judgment prejudice the ■claims of domestic creditors, if there be any, nor interfere with the independent action of the probate court in directing this Ohio administration.
As defendants were non-residents of the state, having ■debts owing to them in their official character, in Franklin county, they were liable to be sued there if service could be made.
2. "Was the service on Mayberry Goheen in the State of Maryland a good service ?
¥e have in part anticipated this question. By section 74 it is provided that:
“ In all eases where service may be made by publication, *468 personal service of a copy of the summons and complaint may be made out of the state.”
By sections 70 and 71 it is provided that:
“ Sec. 70. Service may be made by publication in either of the following cases : ... In actions brought against a non-resident of this state, . . . having in this state property or debts owing to them, sought to be taken by any of the provisional remedies or to be appro-' priated in any way.”
Sec. 71. “Before service can be made by publication, an affidavit must be filed that service of a summons can not be made within this state on the defendant or defendants for be served by publication; and that the case is one of those mentioned in the preceding section. When such affidavit is filed, the party may proceed to make service by publication.”
It is not claimed that any of the provisional remedies of the code, which warrant service by publication, were sought; but it is claimed that it is an action where there is property in this state and debts owing to defendants, sought “ to be appropriated ” by this action.
The right to serve a defendant by summons and a copy of the petition outside of the state, is limited to cases where constructive service can be made.
By section 70, when a defendant is a non-resident having-property in this state or debts owing to him, sought to be taken by any of the provisional remedies, orto be appropriated in any way, and personal service can not be made within the state, then service may be made by publication. It is essential to the jurisdiction of the court, either that there be persona] service,'or that the subject-matter of the action be under the control of the court. In case there is no personal service, the court has no jurisdiction unless property is reached or sought to be appropriated. To appropriate property by a judgment or decree of the court, is in the nature of a proceeding in rem.
The judgment, instead of acting on the person, acts on the thing, and only binds the person so far as he has rights *469 in the property affected, and only then, subject to his right to have it vacated under section 75 of the code. Wood & Pond v. Stanberry, 21 Ohio St. 148.
The relief sought in the case at bar, was a money judgment against the estate as authorized by statute.
Such a judgment would not appropriate in any way the property or debts owing to the estate within the meaning of the code.
If a personal judgment, with the right to execution .against the estate, would amount to an appropriation of any part of this estate, then every such judgment against any person has the same effect, and it would follow that constructive service, or service out of the state, could be made in all actions to recover a money judgment where there was property in the state liable to execution, and the de-fendant might be served out of the state, without resorting to the remedial provision of the code.
The court must acquire jurisdiction over the property, •¿md its judgment must directly affect such property, otherwise it is not an appropriation of it in any way.
The motion to quash the service on G-oheen was therefore properly sustained.
8. Was the service on Mrs. Williams valid?
It was regularly made, July 29, on an alias summons of -the same date, by the sheriff of Eranklin county. The writ was in statutory form, and properly attested and sealed.
The claim made is, that it is a void writ, because issued •and served within the life of another alias writ, dated July 23 and returnable August 5. .
The last writ was indorsed by the sheriff, with an authority to one Seymour, of Baltimore, to serve the same in Maryland, and was on the 29th of July in his hands, and beyond the jurisdiction of the court, or the control of the •officer or the plaintiff'.
The code (sec. 60) provides that when a writ is returned “ not summoned,” other writs may be issued, and *470 when defendants reside in different counties, writs may be-issued to such other counties at the same time.
It is argued that all process is the creature of the statute, and as there is no provision for issuing one writ before the-other is returned, when directed to the same county, and as provision is made for more than one writ when the defendants reside in different counties, the maxim “ expressiounius exclusio alterius” applies.
If this maxim is to govern in construing statutes relating to incidental remedies in all cases, it would lead us back to the era of technicality from which the code was intended-to relieve the practice.
No better illustration of this can be found than to apply this maxim to this section of the code. It provides for alias writs only when a wx'it is returned “ not summoned.” Therefore, if it is never returned, or is lost or destroyed, ox-filed without any return, no other writ can be issued, for “ the expression of one thing is the exclusion of another, and as provision is made for other writs in a given case, it excludes the power to issue in all other cases not ex-px-essed.”
This maxim, while of great value in the construction of wxitten instruments, is not, as this illustration of its application demonstrates, of univex-sal applicatioxx, and must be-used with great caution. Price v. The Great W. Ry. Co. 16 M. &. W. 244; Attwood v. Small, 6 Cl. & Finn. 48; Broom’s Legal Maxims, 654, 657.
The provisions of the code, and all proceedings under it, are to be liberally construed, with a view to promote its object and assist the parties in obtaining justice. Code,, sec. 2.
At the time the writ, which was served on Mrs.- "Williams, was issued and sei'ved, there was no other writ in the-sheriff’s hands, nor within the control of the court, officer, or party. The writ of July 23 had been sent out of the-state without authority of law, and placed in the hands of a stranger in Baltimore. The fact that it may have been* *471 sent to Maryland at the instance of plaintiff can make no difference as to its validity.
Eor all practical purposes, it was the same as if lost or destroyed, or had never been issued.
The object of a summons is to give the party notice, and as each of these writs was in due form, one was as effectual, as a notice, as the other to the party served.
Keeping in view the remedial provisions of the code of civil procedure, and the fact that they are to be liberally construed to promote justice, and not to defeat it, we can see no substantial reasons for not allowing another summons to issue within the life of the former when it has been lost, destroyed, or in any way become unavailable for use, at the proper time. In such cases the costs for the new writ can be taxed at the discretion of the court, and substantial justice done.
The motion to quash the service on Mrs. Williams was improperly sustained, and as to it the judgment of the district court is affirmed.
In an action against co-executors and administrators, both are properly joined as defendants, and should in general be served; but what the rights of the plaintiff are under section 77, and other provisions of the code, before service is made on Goheen, we have not felt called on to determine, as that question did not arise upon the motion to quash.
The judgment of the district court is therefore affirmed, except as to the motion to quash the service on Mayberry Goheen, and as to that motion, the judgment of the common pleas is affirmed